# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| RAGHUNATHAN SARMA, | ) | |
| NEBRASKA PARTNERS FUND, LLC, | ) | |
| and LINCOLN PARTNERS | ) | |
| FUND, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:15-MC-63 |
| | ) | |
| WELLS FARGO & COMPANY, and | ) | |
| WELLS FARGO BANK, N.A., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiffs' "Motion for Leave to File Response in Opposition to Motion to Quash Subpoenas by Jeffrey Martin and William Spitz" (the "Motion for Leave"). (Docket Entry 9.)[1]  For the reasons that follow, the Court will grant the Motion for Leave and will consider the belated Response submitted by Plaintiffs (Docket Entry 9-1), but will not alter the prior decision to grant the Motion to Quash (Docket Entry 1).

## I. BACKGROUND

This action arises out of deposition subpoenas issued to third-parties Jeffrey Martin ("Martin") and William Spitz ("Spitz," collectively with Martin, "Movants") in a case pending in the United States District Court for the Southern District of Florida

---

[1] Citations herein to Docket Entry pages utilize the document's internal pagination if unified internal pagination exists.  In the absence of such pagination, the Docket Entry page citations utilize the CM/ECF footer's pagination.

(the "Florida Case"), see Sarma v. Wells Fargo & Co., 1:15-cv-21377-CMA (S.D. Fla. 2015). (Docket Entry 1 at 1.) Plaintiffs originally noticed Movants' depositions in Charlotte (the "Charlotte Action"). (Docket Entry 2 at 4; see also Docket Entry 10 at 3.) Movants moved to quash the subpoenas in the United States District Court for the Western District of North Carolina. Sarma v. Wells Fargo & Co., 3:15-mc-177, Docket Entry 1 (W.D.N.C. Sept. 22, 2015). In response, Plaintiffs filed a "(1) Notice of Withdrawal of Subpoenas . . . and (2) Motion to Dismiss Pending Motion to Quash Subpoenas" in the Charlotte Action. Sarma, 3:15-mc-177, Docket Entry 3 (W.D.N.C. Oct. 5, 2015). Upon notice of withdrawal of the subpoenas, the United States District Court for the Western District of North Carolina closed the Charlotte Action without ruling on Movants' pending motion to quash. (Docket Entry 2 at 4); see also Sarma, 3:15-mc-177 (W.D.N.C. 2015) (case terminated Oct. 6, 2015).

Subsequently, Plaintiffs issued Movants new subpoenas, this time noticing their depositions in Winston-Salem. (Docket Entry 10 at 4.) Movants then filed a "Motion to Quash Subpoenas by [Movants]" (the "Motion to Quash") in this Court. (Docket Entry 1 at 1.) In their Motion to Quash, Movants contended that Plaintiffs' withdrawal of the subpoenas in the Charlotte Action evidenced forum shopping, and that Movants sat for depositions on the facts at issue in the Florida Case in a prior, related action

2

involving the IRS and Plaintiffs Nebraska Partners Fund, LLC ("Nebraska") and Lincoln Partners Fund, LLC ("Lincoln") (the "IRS Case"). (Docket Entry 2 at 3-4.) Movants' Motion to Quash further argued that allowing Plaintiffs to depose them in the Florida Case on the same facts at issue in the IRS Case would subject them to an undue burden under Rule 45(d)(3)(A)(iv) of the Federal Rules of Civil Procedure (the "Rules"). (Id. at 6.)

On November 30, 2015, the Court noted that Plaintiffs had failed to timely respond to Movants' Motion to Quash (see Docket Entries dated Nov. 2, 2015 through Nov. 27, 2015), and, accordingly, granted the Motion to Quash as unopposed pursuant to Local Rule 7.3(k), concluding that

> Movants have satisfied their burden of showing that the proposed depositions would constitute an undue burden, in that their potential value to the case at issue would not exceed the inconvenience to [M]ovants under the circumstances presented. In reaching that conclusion, the Court [took] particular note of the undisputed showing that Plaintiffs previously effectively deposed Movants in related litigation and that Plaintiffs effectively engaged in forum shopping rather than litigating a prior challenge to depositions of Movants.

(Text Order dated Nov. 30, 2015.) Plaintiffs filed their Motion for Leave later that same day (see Docket Entry 9 (filed Nov. 30, 2015, but after Text Order dated Nov. 30, 2015)), requesting that the Court allow "Plaintiffs leave to file *instanter* an Opposition to the Motion to Quash," and "[c]onsider the Motion to Quash in light of Plaintiffs' Opposition" (id. ¶¶ 1-2). Plaintiffs attached their "Opposition to Motion to Quash Subpoenas by [Movants]" (the

3

"Opposition") (Docket Entry 9-1) to their Motion for Leave (Docket Entry 9).  Movants responded.  (Docket Entry 11.)

## II. DISCUSSION

The Motion for Leave seeks relief under Rule 6(b)(1)(B), stating that Plaintiffs' failure to timely file the Opposition was "[d]ue to [Plaintiffs'] counsel's good-faith failure to apprehend the application of the 21-day rule to this Miscellaneous Action." (Docket Entry 10 at 2.)[2]  Further, according to the Motion for Leave, Plaintiffs' counsel did not notice that, consistent with the 21-day rule, the docket text associated with the Motion to Quash specifically set a response deadline of November 27, 2015, because they had not filed their notices of appearance in this case prior to the docketing of the response deadline.  (Id. at 4; see also Docket Entry 12 at 5 ("The deadline was set before any of the undersigned counsel appeared and it was missed.").)  In addition, the Motion for Leave alleges that Plaintiffs withdrew the notices of deposition in the Charlotte Action, not to avoid an adverse ruling on Movants' pending motion to quash, but to address a third witness' location objection.  (Docket Entry 10 at 3.)  Finally, the Motion for Leave asserts that the Opposition (Docket Entry 9-1) to the Motion to Quash in this case "is basically the same" as the

---

[2] "The respondent, if opposing a motion, shall file a response, including brief, within 21 days after service of the motion (30 days if the motion is for summary judgment; see LR 56.1(d))."  M.D.N.C. LR7.3(f).

4

opposition brief Plaintiffs filed in the Charlotte action, such that Movants effectively knew Plaintiffs' position well before Movants filed the Motion to Quash.  (Docket Entry 10 at 3-4.)

As previously noted, the Court granted Movants' Motion to Quash before Plaintiffs filed their Motion for Leave.  Under these circumstances, Plaintiffs must not only demonstrate entitlement to relief under Rule 6(b) (for their failure to timely file their Opposition and/or request an extension of time), but must also show entitlement to reconsideration of the prior order granting Movants' Motion to Quash.  See Batton v. Communications Workers of Am., AFL-CIO, 2:13CV426, 2014 WL 5742409, at *3 (E.D. Va. Aug. 4, 2014) (unpublished) (construing motion for leave to file response in opposition to motion to strike filed after the court had granted motion to strike as a motion to reconsider the court's order granting motion to strike).

## A. Rule 6(b)

"When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect."  Fed. R. Civ. P. 6(b).  This Rule nominally requires a showing of both "good cause" and "excusable neglect," but the Fourth Circuit effectively has collapsed these two requirements.  See Lovelace v. Lee, 472 F.3d 174, 203 (4th Cir. 2006) ("A district court has discretion to grant an enlargement of

5

time 'upon motion made after the expiration of the specified period where the failure to act was the result of excusable neglect.' Fed. R. Civ. P. 6(b). We find no abuse of discretion here. The district court had a reasonable basis for finding good cause (or excusable neglect) . . . ." (internal ellipses omitted)). This approach makes sense because, whereas courts have described the "good cause" standard as "non-rigorous," Ahanchian v. Xenon Pictures, Inc., 624 F.3d 1253, 1259 (9th Cir. 2010), "liberal," Coon v. Grenier, 867 F.2d 73, 76 (1st Cir. 1989), and "not . . . particularly demanding," Stark-Romero v. National R.R. Passenger Co., 275 F.R.D. 544, 547 (D.N.M. 2011), the Fourth Circuit has declared that "'[e]xcusable neglect' is not easily demonstrated," Thompson v. E.I. DuPont Nemours & Co., Inc., 76 F.3d 530, 534 (4th Cir. 1996).

**B. Rule 54(b)**

In determining whether to reconsider the order granting Movants' Motion to Quash (see Text Order dated Nov. 30, 2015), the Court recognizes that "[t]he Federal Rules of Civil Procedure do not set out any standard for reconsideration of interlocutory orders," Akeva, LLC v. Adidas Am., Inc., 385 F. Supp. 2d 559, 565 (M.D.N.C. 2005), but only provide that

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment

6

adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).[3] Accordingly, when justice requires, the Court possesses the discretion to revisit its order at any time prior to final judgment. United States v. Duke Energy Corp., 218 F.R.D. 468, 473-74 (M.D.N.C. 2003).

Although "[m]otions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment," American Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514 (4th Cir. 2003), for guidance, "courts applying Rule 54(b) have borrowed factors from Rule 59(e) and Rule 60(b), which include (1) evidence not previously available has become available, (2) an intervening change in the controlling law, (3) a clear error of law or manifest injustice, (4) mistake, inadvertence, surprise or excusable neglect, or (5) any other reason justifying relief from the operation of the judgment." McGhee v. United States, Civ. Action No. 5:09-CT-3192-BO, 2011 WL 2976274, at *1 (E.D.N.C. Jul. 22, 2011) (unpublished) (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1469 (4th Cir. 1991), and Superior Bank v. Tandem Nat'l Mortg., 197 F. Supp. 2d 298, 332 (D. Md.

_____

[3] An order granting a motion to quash is not a final order. See In re Topper, 23 F. App'x 127, 128 (4th Cir. 2001) ("A final order is one that disposes of all the issues in dispute as to all parties, and 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" (quoting Catlin v. United States, 324 U.S. 229, 233 (1945))).

2000)).[4]  "[M]otions for relief from orders based on an attorney's failure to meet court imposed deadlines are generally analyzed under the excusable neglect prong of Rule 60."  Cockrell v. Lexington Co. Sch. Dist. One, 3:11-CV-2042-CMC, 2011 WL 5554811, at *2 (D.S.C. Nov. 15, 2011) (unpublished).  Because "[e]xcusable neglect generally has the same meaning throughout the federal procedural rules," Martinez v. United States, 578 F. App'x 192, 194 n.* (4th Cir. 2014) (citing Pioneer, 507 U.S. at 392), a determination that Plaintiffs have demonstrated excusable neglect in relation to their failure to timely respond to Movants' Motion to Quash appears equally applicable to the analysis of whether to reconsider the order granting Plaintiffs' Motion to Quash.

## C. Excusable Neglect

To determine whether excusable neglect exists, the Court must first assess whether the failure to comply with the deadline resulted from neglect and then must decide whether that neglect

---

[4] Courts also must consider that "[p]ublic policy favors an end to litigation" and "efficient operation [of the courts] requires the avoidance of re-arguing questions that have already been decided."  Akeva, 385 F. Supp. 2d at 565 (citing Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003)).  To that end, a motion to reconsider under Rule 54(b) "'is not proper where it only asks the Court to rethink its prior decision, or presents a better or more compelling argument that the party could have presented in the original briefs on the matter.'"  Volumetrics Med. Imaging, LLC v. Toshiba Am. Med. Sys. Inc., No. 1:05CV955, 2011 WL 6934696, at *2 (M.D.N.C. Dec. 30, 2011) (unpublished) (quoting Hinton v. Henderson, No. 3:10CV505, 2011 WL 2142799, at *1 (W.D.N.C. May 31, 2011) (unpublished)).

qualifies as excusable.  <u>Pioneer Inv. Servs. Co. v. Brunswick</u>

<u>Assocs. Ltd. P'ship</u>, 507 U.S. 380, 388 (1993).  Neglect

"encompasses both simple, faultless omissions to act and, more

commonly, omissions caused by carelessness."  <u>Id.</u>  In this case, no

basis exists to doubt Plaintiffs' representation that their out-of-

town counsel simply overlooked the Court's deadline in failing to

timely respond to Movants' Motion to Quash.  Accordingly, the Court

must consider whether the neglect was excusable by examining the

following factors: "[1] the danger of prejudice to the [opposing

party], [2] the length of the delay and its potential impact on

judicial proceedings, [3] the reason for the delay, including

whether it was within the reasonable control of the movant, and [4]

whether the movant acted in good faith."  <u>Id.</u> at 395.[5]

**i. Danger of Prejudice**

Movants concede that the first factor, i.e., the danger of

prejudice to the opposing party, <u>see</u> <u>id.</u>, favors Plaintiffs.

(Docket Entry 11 at 2.)  Further, Plaintiffs have informed the

Court that the Florida Case is currently stayed at the parties'

_____

[5] In reviewing these factors, courts must not focus only on
the actions (or inaction) of the party, but also "on whether [that
party's] attorney, as [the party's] agent, did all he [or she]
reasonably could to comply with the [deadline]." <u>Pioneer</u>, 507 U.S.
at 396; <u>see also</u> <u>id.</u> at 396–97 (taking note of prior decisions,
"[i]n other contexts, . . . [holding] that clients must be held
accountable for the acts and omissions of their attorneys" in
declaring that, "in determining whether [a party's] failure to
[meet a deadline] was excusable, the proper focus is upon whether
the neglect of [the party] and [its] counsel was excusable").

joint request, that "[t]here are no pending deadlines in the
[Florida Case] and [that Movants'] depositions at issue in [the
Motion to Quash] will likely not proceed until the stay is lifted."
(Docket Entry 10 at 4; see also Docket Entry 10-1 (Florida court's
order granting Parties' Joint Motion to Stay).)  The first Pioneer
factor thus strongly favors Plaintiff's position, particularly
given that, in this context, "delay in and of itself does not
constitute prejudice to the opposing party," Colleton Preparatory
Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 418 (4th Cir.
2010), and that no prejudice accrues from "los[ing] a quick
[default-based] victory," Augusta Fiberglass Coatings, Inc. v.
Fodor Contracting Corp., 843 F.2d 808, 812 (4th Cir. 1988).

## ii. Length of Delay and Potential Impact on Judicial Proceedings

Similarly, Movants concede that the second factor, i.e., the
length of the delay and its impact on judicial proceedings, see
Pioneer, 507 U.S. at 395, favors Plaintiffs (Docket Entry 11 at 2).
The Court agrees and notes that only one business day elapsed
between the expiration of the deadline set by the Court for
Plaintiffs to respond to Movants' Motion to Quash (see Docket Entry
1 (noting in docket text:  "Responses due by 11/27/2015")) and the
filing of the instant Motion for Leave (see Docket Entry 9 (filed
on Nov. 30, 2015)).  In applying the Pioneer factors, other courts
have deemed much longer periods of delay "minimal."  Bateman v.
United States Postal Serv., 231 F.3d 1220, 1225 (9th Cir. 2000);

10

Smith v. Rockett, No. CIV-06-492-M, 2010 WL 274497, at *3 (W.D. Okla. Jan. 15, 2010) (unpublished); Iannace v. Rogers, Civil No. 03-5973(JBS), 2006 WL 2038492, at *3 (D.N.J. Jul. 18, 2006) (unpublished).

### iii. Reason for the Delay

As to the third factor, i.e., the reason for the delay, see Pioneer, 507 U.S. at 395, Plaintiffs identify "inadvertence" as the cause, in that, "[d]espite checking the docket several times, [Plaintiffs'] counsel failed to notice that the motion docket entry automatically set November 27, 2015 as the due date for the response." (Docket Entry 12 at 4.) This factor thus weighs against Plaintiffs. See Pioneer, 507 U.S. at 392 (acknowledging that "inadvertence, ignorance of the [R]ules, or mistakes construing the [R]ules do not usually constitute 'excusable' neglect").

### iv. Good Faith

The fourth factor, i.e., whether Plaintiffs acted in good faith, see id. at 395, favors a finding of excusable neglect. Movants contend that "the record lacks any indication that Plaintiffs took any reasonable steps to attempt to comply with the applicable deadline or to obtain relief from it" and that "[c]onsciously ignoring a deadline does not constitute good faith conduct." (Docket Entry 11 at 4 (internal brackets, quotation marks, and citation omitted)). However, Movants have offered no

11

basis for the Court to conclude that Plaintiffs acted "consciously" when they failed to file a timely response; to the contrary, the circumstances all appear to support Plaintiffs' confession of a negligent, rather than willful, failure.

**v. Synthesis of Factors**

"In sum, the third *Pioneer* factor weighs against [Plaintiffs], but all three other *Pioneer* factors support a finding of excusable neglect.  Although the third *Pioneer* factor constitutes the most significant, *see Thompson*, 76 F.3d at 534, the Supreme Court's holding in *Pioneer* makes clear that, even where an attorney is 'remiss' in allowing a deadline to pass (i.e., lacks an acceptable reason for his or her oversight), a court may find excusable neglect when the record lacks 'any evidence of prejudice to [the opposing party] or to judicial administration in th[e] case, or any indication at all of bad faith,' *Pioneer*, 507 U.S. at 398." United States v. Manriques, No. 1:10CR440-1, No. 1:13CV444, 2013 WL 5592191, at *5 (M.D.N.C. Oct. 10, 2013) (unpublished).  This case presents such circumstances and thus Plaintiffs have made the showing necessary to secure leave to file their Opposition (Docket Entry 9-1) to Movants' Motion to Quash (Docket Entry 1).

As the Fourth Circuit has explained, the doctrines courts use to guide their discretion under Rule 54(b) do "not and cannot limit the power of a court to reconsider an earlier ruling[, because t]he ultimate responsibility of the federal courts, at all levels, is to

reach the correct judgment under law." Am. Canoe Ass'n, 326 F.3d
at 515; see also DN ex rel. Nelson v. Snyder, 1:08-CV-0526, 2009 WL
1323632, at *1 (M.D. Pa. May 11, 2009) (unpublished) (vacating the
court's own previous order granting an unopposed motion to quash to
allow the defendants to file a response and holding that it was
"consonant with justice to allow [the] defendants to oppose the
motion . . . to quash on its merits"). Accordingly, the Court will
reconsider the Motion to Quash (Docket Entry 1), in light of
Plaintiffs' Opposition (Docket Entry 9-1).

## D. Rule 45

The Motion to Quash requests relief under Rule 45, contending
that Plaintiffs have already deposed Movants on the facts at issue
in the IRS Case and that the depositions will impose upon Movants
an undue burden. (See Docket Entry 1.) In response, Plaintiffs
contend that the depositions would not be duplicative because the
parties and issues in the Florida Case are different from the
parties and issues in the IRS Case, and that Movants' have failed
to identify any specific burden that would result from allowing
Plaintiffs' to take Movants' depositions. (See Docket Entry 9-1.)

Rule 45 governs subpoenas issued to non-parties. See Fed. R.
Civ. P. 45. The scope of discovery under Rule 45 tracks Rule 26,
see Kinetic Concepts, Inc. v. ConvaTec Inc., 268 F.R.D. 226, 240
(M.D.N.C. 2010) (citing Fed. R. Civ. P. 26 advisory committee's
note, 1991 amend., subdiv. (a)), which allows for the discovery of

13

> any nonprivileged matter that is relevant to any party's
> claim or defense and proportional to the needs of the
> case, considering the importance of the issues at stake
> in the action, the amount in controversy, the parties'
> relative access to relevant information, the parties'
> resources, the importance of the discovery in resolving
> the issues, and whether the burden or expense of the
> proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

A non-party "'may seek from the court protection from discovery via the overlapping and interrelated provisions of both Rules 26 and 45.'" Snoznik v. Jeld-Wen, Inc., 259 F.R.D. 217, 222 (W.D.N.C. 2009) (quoting Mannington Mills, Inc. v. Armstrong World Indus., Inc., 206 F.R.D. 525, 529 (D. Del. 2002)). In relevant part, Rule 45 provides that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," Fed. R. Civ. P. 45(d)(1), and requires the Court to "quash or modify a subpoena that . . . subjects a person to undue burden" Fed. R. Civ. P. 45(d)(3)(A). Similarly, under Rule 26, the Court must limit the frequency or extent of discovery if it determines that:

> (i) the discovery sought is unreasonably cumulative or
> duplicative, or can be obtained from some other source that is
> more convenient, less burdensome, or less expensive;

> (ii) the party seeking discovery has had ample opportunity to
> obtain the information by discovery in the action; or

> (iii) the proposed discovery is outside the scope permitted by
> Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

14

In other words, the Court "is required to apply the balancing standards: relevance, need, confidentiality and harm. Even if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit." Insulate Am. v. Masco Corp., 227 F.R.D. 427, 432 (W.D.N.C. 2005).

Plaintiffs seek to depose Movants regarding a tax shelter that involved Defendants Wells Fargo & Company and Wells Fargo Bank, N.A., as successor in interest to Wachovia Bank, N.A., First Union Bank, N.A., and First Union Corporation (collectively, "First Union"). (Docket Entry 3-2 at 1; see also Docket Entry 9-1 at 1 ("Plaintiffs seek damages for First Union's involvement in a scheme to induce [Plaintiffs] . . . into participating in fraudulent tax shelter transactions.").) Movants formerly worked for First Union. (Docket Entry 4, ¶ 2; Docket Entry 5, ¶ 2.) In 2001, First Union allegedly introduced Plaintiff Raghunathan Sarma ("Sarma") to a tax shelter called "FOCus." (Docket Entry 9-1 at 3; Docket Entry 2 at 1.) Sarma became involved in FOCus through his two LLCs, Plaintiffs Lincoln and Nebraska. (Docket Entry 2 at 2 (citing Docket Entry 3-11 at 23, 26-27 (Sarma deposition)).) In 2002, Sarma disclosed his participation in FOCus to the IRS. (Docket Entry 3-11 at 123.) The IRS deemed FOCus an illegal tax shelter. (Docket Entry 3-2, ¶ 79.) Lincoln and Nebraska (along with another partnership) sued the IRS. See Kearney Partners Fund, LLC v.

15

United States, 2:10-CV-153-FTM-SPC, Docket Entry 1 (M.D. Fla. Mar. 9, 2010).  In that case, Lincoln and Nebraska deposed Movants Martin and Spitz regarding their work history, responsibilities in First Union's Financial Planning Group, First Union's role in introducing clients to tax strategies, the FOCus tax strategy, First Union's due diligence committee, and several exhibits. (Docket Entry 2 at 8; see also Docket Entry 4-1 (Martin's 30(b)(6) deposition transcript); Docket Entry 5-1 (Spitz's deposition transcript).)  Sarma lost the IRS Case (Docket Entry 2 at 4); see also Kearney Partners Fund, LLC ex rel. Lincoln Partners Fund, LLC v. United States, 803 F.3d 1280 (11th Cir. 2015) (affirming the district court's judgment in favor of the IRS), and then sued First Union for allegedly introducing him to FOCus (Docket Entry 3-2).

Against this backdrop, the Court finds that the burden upon Movants in preparing for their depositions and taking time off work to travel out-of-town to sit for depositions (Docket Entry 11 at 6) outweighs the potential benefit of any information Plaintiffs may obtain through deposing Movants again.  In that regard, Sarma owns and controls both Lincoln and Nebraska.  The parties in the IRS Case and the Florida Case are therefore essentially identical.  In the IRS Case, Plaintiffs, through Lincoln and Nebraska, deposed Movants on FOCus, and Plaintiffs have not identified what information Movants could reveal by sitting through second depositions that Plaintiffs could not have obtained in Movants'

16

previous depositions.  See Fed. R. Civ. P. 26 advisory committee's note, 2015 amend. ("A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them.").

Moreover, fifteen years have now passed since First Union introduced Sarma to FOCus.  Movants were deposed in 2011 in the IRS Case (Docket Entry 4-1 at 1, Docket Entry 5-1 at 1) and indicated on numerous occasions that they could not remember the details surrounding Sarma, FOCus, or documents that they wrote (see, e.g., Docket Entry 4-1 at 53-59; Docket Entry 5-1 at 31-39 & 46-60).  Now that another five years have passed since Movants sat for those depositions, no reason exists to conclude that Movants will be able to offer any other relevant information regarding the details of FOCus or any other related event.  Additionally, Plaintiffs issued a Rule 30(b)(6) notice to Defendants seeking First Union's knowledge of FOCus (Docket Entry 2 at 9-10) and have deposed "three current [First Union] employees who worked with Movants during the events at issue" (Docket Entry 11 at 5), indicating that Plaintiffs may obtain the same type of information they seek from Movants via a more appropriate source (i.e., a party to the Florida Case).  Lastly, in the IRS Case, Plaintiffs sought to defend the legitimacy of FOCus, but now Plaintiffs have reversed course and seek recovery from First Union based on the fraudulent nature of FOCus.  Movants

17

should not have to submit to second depositions simply because Plaintiffs have now adopted a new theory for recovery.

On balance, the Court finds that the burden that nonparty Movants would incur in complying with the deposition subpoenas outweighs the likely value of such depositions to the Florida Case.

### III. CONCLUSION

Plaintiffs have shown entitlement to have the Court reconsider its prior order granting Movants' Motion to Quash in light of Plaintiffs' Opposition, but (after doing so) the Court adheres to its prior decision to grant the Motion to Quash.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Leave (Docket Entry 9) is **GRANTED.**

**IT IS FURTHER ORDERED** that the Clerk shall Docket Plaintiffs' proposed Response (Docket Entry 9-1) as a Response to Movants' Motion to Quash (Docket Entry 1).

**IT IS FURTHER ORDERED** that the granting of Movants' Motion to Quash (Docket Entry 1) is **REAFFIRMED.**

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

February __2__, 2016

18